UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:04CV-128-R

J.P. SILVERTON INDUSTRIES LIMITED PARTNERSHIP and
WAYNE WILLIS                                                                              PLAINTIFFS

v.

NORBERT H. SOHM, WARD CORRELL,
COMMONWEALTH OF KENTUCKY, DEPARTMENT
OF FINANCIAL INSTITUTIONS and
DR. CHARLES KINCAID, et al.                                                       DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on Motion for Summary Judgment (Dkt. # 7) of Defendant Norbert H. Sohm, to which Plaintiffs responded (Dkt. # 10) and Sohm replied (Dkt. 3 17), as well as the Motion for Summary Judgment (Dkt. # 11) of Ward Correll (response at Dkt. # 18, reply at Dkt. # 20), the Motion to Dismiss by Charles Kincaid (Dkt. # 22), and the Motion to Dismiss or for Summary Judgment by the Commonwealth of Kentucky's Department of Financial Institutions ("DFI"). For the reasons that follow, the Court **GRANTS** Defendants' Motions.

**BACKGROUND**

This case arises out of the sale at a court-ordered auction of a piece of real estate known as the Spring Creek Inn, located in Clinton County, Kentucky. Defendant Sohm was the Master Commissioner appointed by the Clinton Circuit Court to conduct the sale of the property. The property was apparently owned by L.D.R. Inc., and was ordered sold to satisfy a judgment obtained by Defendant Ward Correll against that entity. Plaintiff J.P. Silverton Industries

1

Limited Partnership ("Silverton"), through one of its partners, Plaintiff Wayne Willis, entered into a contract with L.D.R., Inc. in which it agreed to redeem the foreclosure in exchange for certain rights in the property.  It sought to do so by offer of judgment to Correll; when the offer was declined, it sought to prevent the sale by paying the judgment directly into the Clinton Circuit Court.  Silverton paid a substantial portion of the sum of the judgment into the court by check on the afternoon of the day before the scheduled sale of the property; it then submitted another check the next morning which it believed constituted the amount of the judgment.  Mr. Willis, along with Ms. Stetler (a principal of L.D.R., Inc.), approached Defendant Sohm shortly before the sale was scheduled to occur, and asked him whether, in light of their payment of the judgment, he would go forward with the sale.  Accounts seem to differ about what, exactly, Mr. Sohm told them in response to this question.  Thereafter, Mr. Willis and Ms. Stetler left the Clinton County courthouse.

Before the sale, Judge Lovelace held a brief hearing to determine whether the amount paid satisfied the judgment; if it had, he would have cancelled the sale.  The parties are in agreement that Mr. Sohm, acting as Master Commissioner, had no authority to decide whether the sale would go forward.  Judge Lovelace, however, found that the amount paid to satisfy the judgment was deficient, and ordered the sale to go forward as scheduled and ordered that the money paid by Silverton be returned to it.  Defendant Correll ultimately purchased the property.  Before the money paid by Silverton could be returned, several creditors with judgments against L.D.R., Inc. and Ms. Stetler sought to garnish those funds.  Those creditors are Defendants Charles Kincaid and the Commonwealth of Kentucky, through its Department of Financial Institutions (now known as the Office of Financial Institutions, "OFI" herein).

Thereafter, Plaintiffs Silverton and Willis filed their complaint in the case at bar. In it, they allege that: (1) the Defendants deprived them of a property right without due process in that they were not able to participate in the sale of the property; (2) the Defendants engaged in a conspiracy to deny them of this right; (3) Mr. Sohm committed fraud when he "represented to the Defendant [*sic*] Willis that he did not intend to offer the subject property for sale;" (Amended Complaint, Dkt. # 4, at 4) (4) the Defendants violated K.R.S. 552.010 *et seq.*, which criminalizes "official misconduct;" (5) the Defendants interfered with Plaintiffs' prospective economic advantage by preventing their participation in the sale; (6) Defendants Correll, Kincaid and the OFI ("Garnishing Defendants") committed abuse of process; and (7) the OFI and Correll engaged in malicious prosecution. All of the named defendants have now moved for either dismissal or summary judgment.

## ANALYSIS

As an initial matter, the Court must consider whether it has jurisdiction over the Defendant OFI. In its Motion for Summary Judgment / Motion to Dismiss, the OFI argues that the Court lacks jurisdiction over it on grounds that it is an organ and alter ego of the Commonwealth of Kentucky and therefore enjoys the same sovereign immunity from suit that the Commonwealth itself enjoys. KRS 287.011(1) creates "within the Department of Public Protection in the Environmental and Public Protection Cabinet an Office of Financial Institutions." Subsection (2) provides that the office "shall exercise all administrative functions of the state in relation to the regulation, supervision, chartering and licensing of banks, trust companies, savings and loan associations, consumer loan companies, investment and industrial loan companies, and credit unions, and in relation to the regulation of securities." Therefore,

3

unless the Commonwealth has waived its immunity from the type of suit brought by the Plaintiffs, the Court has no jurisdiction over the OFI. See, e.g., *Withers v. University of Kentucky*, 939 S.W.2d 340 (Ky. 1997). The Plaintiffs have not alleged, and the Court cannot find, any such explicit abrogation, therefore no suit can be maintained against the OFI.

As to the remaining defendants, the Court must consider the Motions for Summary Judgment.

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of the evidence. To support his position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to

4

render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996).

A brief recital of the events in the Clinton Circuit Court surrounding the sale of the property in question is necessary to the consideration of the summary judgment motions.

Immediately prior to the scheduled sale of the property, Judge Lovelace held a hearing, the transcript of which is part of Exhibit 3 to Defendant Sohm's Motion for Summary Judgment (Attachment # 8 to Dkt. # 7).  Mr. Sohm and Mr. Kinser, counsel for Defendant (and state court creditor) Correll, were present at the hearing; apparently Mr. Willis and Ms. Stetler had left the courthouse.  At the hearing, Judge Lovelace considered a motion filed by Mr. Willis seeking to stop the sale; he overruled that motion on procedural and substantive grounds, holding that it failed to specify a hearing time as required by local rules of procedure and also taking note of Mr. Kinser's statement that the amount paid was insufficient to satisfy the judgment. Mr. Sohm was also present at the hearing.  The sale then took place as scheduled, and the property was purchased by Mr. Correll.

After the sale, Judge Lovelace conducted another hearing after Mr. Willis moved to set aside the sale.  At that hearing, Judge Lovelace heard testimony and argument on that motion, and conducted another hearing later on that same week at which Mr. Sohm testified.  At the first hearing, Mr. Willis testified, as to the conversation with Mr. Sohm, that "[he and Ms. Stetler] approached [Mr. Sohm] ... and told him that we had paid for the property, and in view, we had paid for it would that cancel the sale, and he said 'Yes.'  Then [Ms. Stetler] asked him, 'There won't be any sale?' and he said 'No.'  He said in view that you have paid for the property there won't be any sale, and so we took him at his word and left." Attachment # 3 to Dkt. # 28, at 12.

5

On cross-examination at the hearing, Mr. Willis said that he believed that "at that time [Mr. Sohm] knew that he was going to go ahead and sale [*sic*] that property, and I think he purposely lied to me to keep me from being there to defend my interest." *Id.* at 14.

Judge Lovelace then decided to have another hearing on Saturday of that week in order to hear testimony from Mr. Sohm regarding the conversation(s) with Ms. Stetler and Mr. Willis. Mr. Sohm's testimony was as follows:

> ...when I was leaving [Judge Lovelace's] office, ... Linda Stetler ... handed me some receipts, and I believe attached to it there was [the motion to enjoin the sale of the property]... . ...[S]he said "We paid it in full, we paid it in full," and she was real happy, and I said "Well, great," and she said, "Are you going to stop the sale?" and I said, "I don't stop sales, the Judge does," and I started walking back to my office, and she was following along with me, and she said, " well, the Judge has to stop the sale if it's paid in full," and I said "I believe there's a dispute as to that," because in my conversations with Mr. Kinser's office ... I knew there was a dispute as to the amount. Anyway, her question was, "Well, the Judge will have to stop the sale if it's paid in full," and I said "I believe there's a dispute as to that, and I said, "Is your attorney here?" and she said "No," and I said "Well, is he going to be here?" and she said "I don't know," I said the Judge is going to have a hearing this morning," she said "Well, my attorney put in a Motion and an Order," and I said "Yes, that's what the Judge is going to hear," and I just started walking again. ... Anyway, as I was crossing the street, she said "Well, if it is paid in full, wouldn't the Judge stop the sale?" and I said "I think he would," and then she started clapping, and ... that was the end of my conversation.

Attachment # 2 to Dkt. # 28, at 7-8. In his order granting Correll's Motion to Approve the Sale, Judge Lovelace found that the "monies tendered by objecting Defendants and paid into court [were] insufficient in amount to even satisfy the principal and interest" and that the objection made by the Stetlers and L.D.R., Inc. to the sale was not timely, and, in a handwritten addition to the tendered order, added that he further "f[ound] that Master Commissioner Norbert Sohm did not commit any fraud in the sale of the property in question." Attachment # 13 to Dkt. # 28, at 1.

On the basis of the records filed by the parties, the Court believes that no material issues of fact remain, rendering summary judgment appropriate. Simply put, the evidence in the

6

various filings provides no support for Silverton's allegation that Mr. Sohm misled Mr. Willis and/or Ms. Stetler regarding the sale. No affidavit from Ms. Stetler contradicts Mr. Sohm's account of their conversation, nor does Mr. Willis's testimony in the state court hearings. That Mr. Willis "believed" that Mr. Sohm misled him, without corroboration, is insufficient to create a genuine issue of material fact upon which he may proceed with his claims. Without this, Silverton's claims cannot stand. The civil rights claims (Counts I and II) rely on it, as does the fraud claim (Count III), as well as the violation of K.R.S. 552.010 *et seq.* (Count IV) and the claim for interference with prospective economic advantage (Count V).

The claims related to the garnishment, Counts VI and VII (abuse of process and malicious prosecution, respectively) were fully litigated in state court and are barred as a result of principles of *res judicata*. As the Kentucky Supreme Court said,

> The doctrine of res judicata is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.

*Yeoman v. Commonwealth*, 983 S.W.2d 459, 464 (Ky. 1998) (quoting 46 Am. Jur. 2d *Judgments* § 514). Within the doctrine of res judicata, there are two kinds of preclusion: claim preclusion and issue preclusion. *Id.* at 464-65. "Claim preclusion bars a party from re-litigating a previously adjudicated cause of action and entirely bars a new lawsuit on the same cause of action. Issue preclusion bars the parties from relitigating any issue actually litigated and finally decided in an earlier action." *Id.* at 465 (citations omitted). Issue preclusion does not require absolute identity of the parties, but merely requires that the issue of fact or law have been actually litigated and determined by a final decision or judgment on the merits, that the

determination have been essential to the decision or judgment, and that the party against whom issue preclusion is urged have had a full and fair opportunity to litigate the issue. *Id.* (citing Restatement (Second) of Judgments § 27 (1982)); *Moore v. Commonwealth*, 954 S.W.2d 317, 319 (Ky. 1997); *Revenue Cabinet v. Samani*, 757 S.W.2d 199, 202 (Ky. App. 1988) (quoting Restatement (Second) of Judgments § 27 (1980)).  In the case of the garnishments, the issues of fact and law relating thereto were litigated and determined by final decision on the merits at the state court level; that Plaintiffs did not successfully file their appeal does not change the fact that they had the "full and fair opportunity" required by law.

## CONCLUSION

For the reasons outlined above, this Court concludes that Defendants are entitled to summary judgment and/or dismissal as a matter of law.

An appropriate order shall issue.